Good morning, my name is Diane Kaffenman and I represent Mr. Cabrera. I'd like to reserve two minutes for rebuttal. Just keep your eye on the clock, you know. That's fine. I think that the error in this case can be summed up in one sentence that the judge said when he was determining whether or not to give the instruction. He said the offer of girls in the context of what has been presented as evidence and the actual evidence and testimony that was given appears to more have been as an effort, if you will, to grease the drug deal as opposed to the other way around. That was error. That was for the jury to decide. As you're well aware, the theory of defense instruction has an extremely low threshold. It's been defined as some evidence, slight evidence. The evidence can be weak, insufficient, inconsistent, doubtful credibility. Other cases have said it can be tenuous, superficially reasonable, or plausible. What was the evidence? You're stating the test and the conclusion. But what evidence was there that this was anything other than a mere opportunity? Yeah, we've been talking about girls, but you know, I'd really like some drugs, too. Okay. Well, let me start with what I think is the sum evidence of his lack of predisposition. There's the five factors that you look at. I don't think that the case law says you have to have sum evidence on all five factors, but I think Mr. Cabrera had evidence on all five of them. First factor was character and reputation. There was no evidence introduced at trial that he had any prior drug dealing, that he had ever been involved in drug dealing before. That's an absence of evidence. That in itself doesn't seem to be ñ is there any affirmative evidence in the record at all that this was other than simply affording him an opportunity that he decided to take advantage of? As far as affirmative evidence, I think that you have the fact that the government initiated all of the contacts with him. The government initiated all of the phone calls, all the pages. The government initiated, once there was meetings, they initiated all of the talk of drugs within the meetings. Wasn't the evidence that they initiated the contact with him because they heard he was a drug dealer? Well, the only evidence of that was the fact that it was started, the introduction was done by a confidential informant. But anything that they said she told them would have been hearsay. She didn't testify at the trial. So to base their argument that there was some evidence on hearsay evidence, which isn't admissible, I think would be inappropriate. So in my opinion, no, there was no other. There was no ñ so the evidence of how they got the name was not introduced at trial? The only evidence was the officer said a confidential informant called them and said Mr. Cabrera was a drug dealer. Was an objection to that? At the time, I do not believe that there was an objection to that. That's usually when objections are made at the time. That is true. No, I don't think that there was an objection. If there was no objection at the time, it seems to me that the evidence came in, and therefore the evidence of his reputation is not simply an absence of good reputation, but a sexual affirmative bad reputation. He's a guy as to which we have evidence. People on the street talk about him as a drug dealer. So element one, the most important element, as we've said, about his reputation, I'm sorry, no, it's reluctance that's the most important, but it was one of the elements. It seems to me the evidence cuts against him. Your Honor, I don't believe no matter how much evidence... I also, we do say that the most important element is reluctance, and there's no evidence of reluctance in the record at all. I disagree with that. I disagree with your assessment of that. He brought drugs to the first meeting. So this is not a situation where they meet with somebody to talk about girls, and they say, oh, by the way, got any drugs? He says, well, no, no, I don't want to do it. You know, I don't know anything about it. And then a second or third meeting he brings drugs. He comes to the very first meeting. He brings samples. He says, here, try some. You know, that just strikes me as undercutting any theory of non-predisposition. Well, let me respond to that. First, as far as the issue of whether or not he brought a sample to the first meeting, that was a very highly contested issue at the trial. The sample that the government introduced didn't reflect the date of July 3rd, which was the first meeting, didn't reflect the name of the officer who supposedly took the sample. None of that was on there. So there was no ---- But that's why we have district judges, isn't it, to make those kind of decisions on the spot? The judge did admit the evidence, but my point is that it was contested. And then what you have is evidence of reluctance is before there's any money for drugs exchanged at the first meeting that we have recorded. Mr. Carrera tried to walk out of that restaurant without the officers. They stopped him and said, no, wait for us. I think that's some evidence that he was reluctant, that he was going to leave that scene and not necessarily do the transaction. Even after the second deal that happened in the Sears parking lot, he does the transaction and then they're trying to talk him into doing more drugs and more transactions. He starts to drive the car away. And they, again, say, no, no, stop, you know, we want to keep talking. And I think that perhaps we wouldn't be here at all if the investigators had recorded the very first phone call, had recorded the first 45-minute to an hour meeting, had recorded the next phone call three months later. I don't think that all of that should necessarily cut in their favor. No, Mr. Carrera didn't take the stand and deny anything, but I don't think he's required to take the stand. Anything that comes out in cross-examination, you can take reasonable inferences from it. Here's a problem that you have. We do allow, I mean, the standards for giving an instruction is, as you say, fairly low. But cutting it out of the way is that we do give substantial deference on these matters to the discretion of the district judge. The district judge was there and made the decision. So you have to persuade to some extent that he abuses discretion. I would agree with that. And I think that in the part of my brief where I talk about how he made his decision and the fact that he was relying on inducement requiring coercion when that is not the case. I think those things all go to the fact that he was either misinterpreting the law and then there was evidence that he was weighing the credibility. He was saying this is more likely than that. That wasn't his job. That was the jury's job to decide that. And I think that's also an issue. Your point about the bringing the sample to the first meeting is that the jury could have disbelieved that. Yes. If they disbelieved it, then there would have been evidence, at least there would have been some affirmative evidence then that he was meaning to deal the drugs at the first meeting and therefore some support for the proposition that he wasn't. In other words, there would be some evidence if they disbelieved the ---- That is true. And I think what you need to keep in mind is the first taped conversation that we have, when Mr. Cabrera comes to that meeting and he starts talking to them, the discussion is about women. And then Mr. Cabrera says, let me tell you what I got. And he doesn't start talking about drugs. He doesn't say I got crack cocaine. He starts talking about women. Suppose that they did disbelieve that the sample came to the first meeting and that it somehow was actually a later sample. How is the absence of drugs at the first meeting affirmative evidence of reluctance? It seems to me that whether he brought the samples to the first meeting or the second meeting, he still ---- There's still no showing that he was reluctant to bring drugs into the picture when asked. If, you know, sure, you want my girls, great, and not only that, but would you like some other great stuff to go with it? I guess I just don't see any evidence of reluctance here, even if they disbelieved that. The case law, it doesn't necessarily, even though the standard is some evidence, the case law also looks at absence of evidence as some evidence. They've looked at going and doing the search warrant afterwards, and there's no drugs and there's no money and there's nothing in the apartment. And the Ninth Circuit has said that's some evidence of non-predisposition. So I don't think you can completely exclude the fact that I'm arguing there was no evidence of this or there was no evidence of this to get me to the some evidence threshold. That's how the case law has been worked in the Ninth Circuit, that absence of evidence is some evidence. So I'd like to reserve the last few minutes for rebuttal. Good morning. The trial court, Judge Hunt, who heard this case, specifically stated on the record that the only thing that defense counsel had offered was speculation and theory. There was no real evidence whatsoever. In fact, the only evidence that was deduced at the trial was defense counsel's repeated attempts to have the officers commit to the fact that somehow there was a nexus between the prostitutes and the cocaine. And, in fact, after three direct questions, the answer was always no. Defense counsel, Mr. Albrechts, had stated, you said you'd hook us up with ladies, correct? Response, no. You wanted the defendant to believe that you would use his escort services, and that's why we were providing the cocaine. The response, again, is no. Finally, defense counsel said, well, you played on it. You worked up both his ego and his greed, and the response, again, is no. There's simply no evidence. They talked about girls, correct. They also talked about whether or not they wanted steak sauce and whether or not they were going to learn Spanish. What's missing here is the nexus. Now, to accept defense counsel's argument would basically say, from now on for the entrapment of defense, there's no threshold at all. We're just going to put that away. All you have to do is raise certain theories in your questions, and the questions are not evidence. The evidence here, as the judge correctly found, was simply not existent. Now, defense counsel spoke of the reluctance issue, and as the court has noticed, it's the most important. And what I would ask the court to do is go back to that meeting. It is described to the defense counsel, well, the defendant wanted to leave the restaurant. Ergo, that is reluctance. If you read the meeting, what's happening is they're getting up to leave. Defendant said to both the two officers present, let's go. Who's going to pay the bill? Well, Brooks, who is the lead officer, is with Cabrera, and the officer who's remaining says, well, wait a minute, don't leave me. Now, it's not clear. Does he want to get stuck with the bill that they've just all eaten? It doesn't pertain to the fact that defendant is leaving. In fact, what makes it so disingenuous, defendant is going out to get the drugs. That's what he's doing. And, in fact, at that point, Brooks says to the defendant, where should I do? What should I do? Shall I stay here or shall I go with you? Now, there, obviously, is the most important and opportune moment for that defendant to say, no, stay here, and then he can leave. No, the defendant says, no, you can stay here. I'll be back. And then what happens, the defendant goes out to his car and he signals to the officer, come on out, come on out, and they do the deal. Now, how that can be described as defendant leaving the restaurant, I would say, is misconstruing the facts. Second, the other example they give for reluctance is when they say, well, in fact, at one of the meetings, the defendant says that he had to negotiate, they're negotiating the deal, and he begins to talk about the fact that he doesn't even know the price of a kilo, and therefore, again, going to the issue of his character. Again, if you look at the facts, he knows the price of a kilo. What happens at that meeting on the 24th is the officer says, well, I can get a better price. I can go to Arizona and they're going to give me two keys. If it's all that clear-cut, why would the government object to giving the instruction? Because you're not going to do it. Why are you afraid of the jury? I mean, if the evidence is all that clear-cut, the jury will look at the instruction, fine. Lack of attachment. The government made an objection simply because the defendant had not met the burden of either showing inducement or predisposition. And in their opening and, in fact, in their cross-examination, they kept using the word entrap, to entrap, to induce. And what was quite clear-cut. No, we had no fear of that, Your Honor. However, there's a difference. If you had no fear of that, why didn't you just say, I'll give the instruction? Ha-ha. There is a difference. Why create this problem? Your Honor, the jury should not be given instructions as a matter of law if there's no evidence to support it, Your Honor. That is to say, if there's no evidence to give an instruction on entrapment, then there's no evidence to give an instruction on self-defense. It's simply not applicable. And that's why the government argued against it. The fact that the jury came back with the law in theory, there was not any concern about what the jury might do. It's exactly right. The evidence was there for the jury. There was no evidence whatsoever that he was entrapped. You were concerned that the jury might be confused about- That's correct, Your Honor. Or that the jury might find the government's behavior, whatever it was, somewhat distressing and might have, if it had some weight. And this is not a negative thing to say, but it's not very disingenuous to say that you weren't concerned about something. You were presumably concerned that the jury might get mixed up. Confusion. That's correct, Your Honor. We were not concerned that the jury would look at the government agent's actions and think it was despicable. I mean, as the case was cited in the United States v. Sherman, this is not two addicts working on each other's bad habits and sympathy. This was a very clean deal. This defendant was in it to make the money, and there was absolutely nothing in that record that the government would, as you would say, would be concerned as to how it would seem to the jury. It simply- Nevertheless, you weren't confident enough to say, go ahead, give the instruction, and wish that the jury would reject it. You weren't that confident. But, again, I don't think it's an issue of confidence, Your Honor. Again, I think it's an issue of this is the evidence that came in at trial. Why would it support it? You thought it wouldn't make any difference at all. You wouldn't have objected. No, because if they haven't supported the evidence, Your Honor, then what line do you draw? What instruction is applicable? The instructions stem from the evidence at the trial. If they have not – if they have no evidence as to it, why just throw it into the mix? It doesn't make sense. To avoid an issue at appeal? I'm sorry? To avoid an issue at appeal? I'm fine to be up here, Your Honor. I understand what the Court is saying. I'm simply saying that with respect to the record that was made at trial- You'd be perfectly right if you may well win, but it seems to me that if you really were shouldn't have had the fear to send it to the jury and say, let the jury look at it. We are not ashamed of anything. We didn't entrap. Let the jury decide it. It seems to me that would be the confident thing to do. I mean, you know, maybe you would anyway, but to stand there and tell us, gee, there was no issue at all, the jury couldn't have possibly found that, well, you must have thought the jury might find that after all, or else you wouldn't have argued about  Okay. it seems to me. You can't have it both ways. No, and I agree, but again, Your Honor, I would just state to the fact that it was no evidence of it, so why add to any issue of the confusion in the jury? That would be my response. It was an eleemosynary purpose on your part. I'm sorry, sir? You were just being principled. Yes, sir. Okay. Thank you. I believe you have two minutes left for rebuttal. Your Honor, this defense was not made up out of whole cloth, as someone's being suggested by the government. I'd like to go through some of the comments that she had made as far as what evidence there was of the inducement of the girls for the drugs. Brooks testified he knew that Cabrera had women available. He testified they talked about women a lot. He said he played the role with the ladies in conversation. He asked how much Well, none of that's really relevant to the question of whether he also had a predisposition to deal drugs, right? Let's suppose, as I understand the law, if they did exactly what you say they did, they said, ah, this guy, but with the added information that this guy deals drugs and women, and we think the way to get him to sell drugs to us is to play on the women, and so that's what we're going to do. That would not set up an entrapment defense, right? If he was, in fact, predisposed. I think it's two separate issues. Exactly. You have to assume he was predisposed. Right, they're two separate issues. And as we've all agreed, it's the reluctance or lack of predisposition that really matters, not whether they were playing on the women. I think that the reluctance is the most important factor, but I think to get to the some evidence threshold, if you have some evidence of any of those five factors for predisposition, you have enough for the instruction. I don't think you need some evidence on all five of them to get there, although I think that there is some evidence on all five. So I still don't understand what the playing on the women has to do with the question of reluctance or predisposition. I think it has the question to do with inducement. It doesn't have the answer to do with predisposition. Exactly. I think unless you can say that Mr. Cabrera was, in fact, predisposed, which you can't from this evidence, then you have to look at what the inducement was. And it's our argument the inducement was he was not a soldier. Well, the first thing about him being predisposed was somebody said he was a drug dealer. Someone who didn't testify at the trial, someone who wasn't identified, someone who the officer – But it was evidence in the trial. It was evidence at the trial. The statement was admitted at the trial. But that person was never presented. We have no evidence of anything that happened before that individual. But what was the evidence that he wasn't predisposed? I mean, you have the fact – you say he didn't have the drugs at the first trial, but that's, again, a negative. You say he – what else? What is it that he wasn't predisposed? On the first issue, the fact that there – it's the lack of evidence again. The fact that he had no priors, that there was no drugs in his apartment, that he had no money on him. As far as the second issue, the government did suggest the – all of the deals. As far as the profit motive, he repeatedly says, I'm not making any money off of this. I'm not making any money off of this. I thought he said that in the context of saying, pay me more, because if you don't, I'm not going to make any money off of it. If you look at the first transcript, she's repeatedly saying, I don't make money off of this. And then he says something along the lines of, how I make my money is, and then he starts talking about the women. He says, this is just a deal. I'm not making any money, is what he's saying in that first transaction. Did he ask for more money? He did ask for more money. He said, I'm not making any money off the drugs. And then he said, I'm making $50. I need to up this. Right. So I will make money. My argument is, is that he's saying, if you're not going to take my women, which I thought you were going to do, I'm going to need more money on the drugs, because I'm not making the money on the drugs. I came to you to sell you the women. I think that that is all evidence that's in the record. You can make that reasonable inference. The judge has the authority to take the evidence in the record, make the reasonable inference in the light most favorable to the defense, and then decide. And I think the judge in this case erred. He made the inferences in the light most favorable to the government, and then said, no, I'm not going to give you the instruction. And the jury did not have a chance to deliberate on the defense, which was Mr. Cabrera's Sixth Amendment right. Thank you. Cases argued. We'll cancel.
judges: Kozinski, Graber, Berzon